UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | | |
|---|---|---|
| STEVEN ALLEN McGEE, # 10511-040, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:08-cv-154 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| UNITED STATES, et al., | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) | |
| _____ | ) | |

　　　　This is a civil action brought by a federal prisoner alleging claims under the Racketeer

Influenced and Corrupt Organizations Act (RICO), the Federal Tort Claims Act (FTCA), and other

federal and state-law theories.  The claims in plaintiff's amended complaint all arise from the

proceedings in *United States v. Steven McGee*, case no. 1:01-cr-122 (W.D. Mich.), a criminal case

which concluded with the imposition of a 10-year prison sentence and orders of forfeiture.

Plaintiff's *pro se* amended complaint, spanning 131 pages, challenges the events leading up to his

prosecution, the constitutionality of his plea-based conviction and sentence, the criminal forfeiture

proceedings, and the validity of numerous orders entered by Chief Judge Bell and by the United

States Court of Appeals for the Sixth Circuit.  Plaintiff names 42 defendants, who fall within six

major groups:  (1) federal law enforcement officers and assistant United States Attorneys who

investigated and prosecuted plaintiff; (2) district judges and magistrate judges of this court who

handled plaintiff's criminal case and subsequent civil actions, along with the Clerk and deputy clerks

of this court; (3) the defense attorneys who represented plaintiff in this court; (4) deputy clerks and

staff attorneys of the Sixth Circuit who handled one or more of the thirty-four *pro se* appeals that plaintiff instituted to challenge his criminal conviction and the forfeiture orders; (5) real estate agents, title companies, purchasers, and others who dealt with the forfeited property; and (6) officials or employees of the Federal Bureau of Prisons responsible for the conditions of plaintiff's confinement in Maclean, Pennsylvania.

The Court has granted plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The court must read plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, I conclude that plaintiff's complaint is both frivolous and malicious and that it seeks monetary relief against clearly immune defendants. I therefore recommend that the amended complaint be dismissed with prejudice.

**Proposed Findings of Fact**

**A.      Proceedings in *United States v. Steven Allen McGee*, Case No. 1:01-cr-122**

A brief recitation of the facts appearing of record[1] in the criminal case of *United States v. Steven Allen McGee*, case no. 1:01-cr-122, will provide necessary background to the prolix

---

[1] This court may take judicial notice of the records of its own proceedings. *See United States v. Doss*, 563 F.2d 265, 269 n.2 (6th Cir. 1977); *accord Armour v. McCalla*, 16 F. App'x 305, 306 (6th Cir. 2001).

and convoluted allegations in plaintiff's amended complaint. *United States v. McGee* began with the filing of an Indictment against Steven Allen McGee and Todd Richard Estes on May 24, 2001, charging them with conspiracy to manufacture more than 1,000 marijuana plants, 21 U.S.C. §§ 841(a)(1), 846, manufacture of marijuana plants, 21 U.S.C. § 841(a)(1), and related forfeiture allegations. Ultimately, both Todd Richard Estes and plaintiff entered pleas of guilty to superseding Informations charging them with conspiracy to manufacture more than 1,000 marijuana plants, with related forfeiture allegations.

Plaintiff's plea agreement is attached to this report and recommendation. Germane to the present case, the plea agreement provided that:

- Plaintiff agreed to waive indictment and enter a plea of guilty to an Information charging him with conspiracy to manufacture more than 1,000 plants of marijuana, punishable by a mandatory minimum of 10 years and a maximum of life imprisonment. (¶ 1).

- Plaintiff agreed to forfeit to the government all items of personal and real property listed in count 2 of the Information and agreed to effect the transfer of clear marketable title to the government of all such assets. (¶ 2). Included in the assets listed in count 2 were bank accounts with Michigan National Bank containing over $86,000.00 in cash, certain vehicles, and two parcels of real property: 10603 Stadium Drive in Kalamazoo (the "Stadium Drive property"), and lots 28, 29, 30 and 31 of Burnett's Addition in Pokegon Township, Kalamazoo County (the "Pokegon property").

- Plaintiff admitted that he was involved in the manufacture of more than 1,000 marijuana plants. (¶ 3).

- Plaintiff agreed to cooperate with government investigators. (¶ 6).

- The government agreed to recommend sentencing at the lowest end of the guideline range. (¶ 7).

- Plaintiff acknowledged that no threats or promises, other than those set forth in the plea agreement, had induced him to plead guilty. (¶ 12).

Plaintiff and his retained counsel, defendant Jeffrey O'Hara, appeared before Magistrate Judge Ellen S. Carmody (also a defendant in the present case) on July 30, 2001, for purposes of entering a plea of guilty pursuant to the plea agreement. (A transcript of that proceeding is also attached to this report and recommendation.) The government was represented by defendant Rene Shekmer, an Assistant United States Attorney. The plea transcript speaks for itself, but several of its provisions are pertinent to the present case. First, plaintiff admitted under oath that he "was partners with Todd Estes and Scott Baker in a marijuana growing operation that we grew over several years, over the four years we're charged with growing marijuana out in the cornfields in Southern Michigan." (Tr. 15). Plaintiff admitted that the amount of marijuana involved was more than 1,000 plants. (*Id.*). The transcript contains discussion concerning the money and real estate subject to forfeiture, during which plaintiff claimed that much of the money was legitimate but also admitted that legitimate money was commingled with the proceeds of drug trafficking. (*Id.* 16-18). Plaintiff testified under oath that his guilty plea was not the result of any force, threats, or promises apart from the promises in the plea agreement and that he was acting of his own free will. (*Id.* 9).

After entering his guilty plea, plaintiff absconded from bond and failed to appear for sentencing. Judge Bell issued an arrest warrant on November 5, 2001. While plaintiff was at large, the court entered forfeiture orders pursuant to the plea agreement. The court's final orders of forfeiture, entered in November and December, 2001, forfeited to the United States Government 78

firearms, currency and bank accounts totaling approximately $300,000.00, and three parcels of real property:  property on Mount Olivet Road in Kalamazoo; the Stadium Drive property; and the Pokegon property.

While plaintiff was still a fugitive, he filed numerous *pro se* motions to withdraw his plea, to discharge his counsel, for evidentiary hearing, and for sundry other relief.  The court set a hearing on the first round of motions for September 19, 2002, but plaintiff failed to appear.  Plaintiff continued to deluge the court with *pro se* motions.

Plaintiff remained at large until February 25, 2004, when he was arrested.  He discharged his appointed counsel and received the court's permission to proceed *in pro per*.  Kenneth Tableman (a defendant in this case) was appointed standby counsel.  The record in the criminal case contains literally volumes of handwritten *pro se* submissions.  During the pendency of sentencing proceedings, plaintiff filed a *pro se* civil rights action, *McGee v. Bell*, case no. 1:04-cv-222, in which he sought a temporary restraining order to delay the sentencing hearing.  Judge Richard Enslen dismissed the action as frivolous, and the Sixth Circuit ultimately affirmed (case no. 04-1637).

Judge Bell imposed sentence by judgment entered May 21, 2004.  The court sentenced plaintiff to 120 months' imprisonment, the mandatory minimum sentence.  This sentence represented an acceptance of the government's recommendation, made in the original plea agreement before plaintiff absconded, to sentence plaintiff to the lowest possible term.  Plaintiff ultimately filed 34 notices of appeal, contesting virtually every decision in the trial court.  The Sixth Circuit Court of Appeals ultimately affirmed plaintiff's conviction and sentence and rejected or dismissed all other appeals.  *See* Sixth Circuit case nos. 04-1406, 04-1440, 04-1509, 04-1537, 04-1706, 04-1723, 04-1724, 04-1728, 04-1729, 04-1730, 04-1731, 04-1732, 04-1734, 04-1735, 04-1736, 04-1737, 04-

1744, 04-1745, 04-1746, 04-1747, 04-1782, 04-1783, 04-1784, 04-1785, 04-2002, 04-2003, 04-2004, 04-2005, 04-2006, 05-2198, 05-2207, 06-1010, 07-1008, 07-1009.[2]  The Supreme Court of the United States also denied numerous *certiorari* petitions.

### B.    The Present Case

Plaintiff initiated the present case on September 24, 2007, by filing a 52-page complaint in the United States District Court for the District of Columbia.  The complaint named the United States, as well as former Attorney General Alberto Gonzales, the former United States Attorney for this district and all assistants who worked on the prosecution against plaintiff, a number of DEA agents and deputy marshals, defense attorneys, Judge Bell, Magistrate Judge Carmody, Ronald Weston (the Clerk of this court) and other Clerk's Office employees, Circuit Judges Guy, Gillman, and Rogers, employees of the Clerk's Office of the United States Court of Appeals for the Sixth Circuit, and numerous other defendants.  The complaint alleged a "widespread conspiratorial enterprise" to deprive plaintiff of his constitutional rights and sought relief under the Federal Tort Claims Act (FTCA).  On the day the complaint was filed, District Judge Richard Roberts found that venue was improper in the District of Columbia and ordered the matter transferred to this court pursuant to 28 U.S.C. § 1406(a).  Plaintiff, true to form, filed an appeal in the D.C. Circuit, which the appellate court construed as a petition for writ of mandamus.  By order entered February 5, 2008, the D.C. Circuit denied mandamus relief, finding that the order of transfer was proper.  (*In re Steven A. McGee*, no. 07-5376 (D.C. Cir. Feb. 5, 2008).

---

[2] In the most extensive of these appellate proceedings (No. 04-1706), the Sixth Circuit considered and rejected most of the claims of Fourth Amendment violations, trial court error and ineffective assistance of counsel that plaintiff raises in the present case.

This case was received by the Clerk of our court on February 19, 2008, and was assigned case no. 1:08-cv-154. On February 25, 2008, plaintiff filed an amended complaint, revising the nature of his claims. The amended complaint dropped the three circuit judges, as well as other parties, and now asserts RICO, *Bivens*, and FTCA claims. In the long preamble to the complaint, plaintiff alleges a conspiracy to deprive him of property and assets and to deprive him of his right to be free from illegal searches and seizures and to enjoy due process of law and the right to counsel. (p. 6). Plaintiff asserts that one of the objects of the conspiracy was to deprive him of over $86,000.00 in savings accounts in addition to the Stadium Drive property and the Pokegon properties. (p. 7). He asserts that the court and all attorneys named as defendants conspired to deprive him of his legal defenses arising from illegal search and seizure of his property and worked to cover up wrongdoing by officers. (p. 8). Plaintiff explains that the United States is named as a defendant under the Federal Tort Claims Act, as it is responsible for the tortious acts of its employees (pp. 8-9) and that employees of the DEA and U.S. Marshal Service are named as *Bivens* defendants. Plaintiff further alleges that the racketeering conspiracy extends to the United States Court of Appeals for the Sixth Circuit, which was corrupted by the United States Attorney and participated in fraudulent concealment of wrongdoing. (p. 11).

The factual allegations in the numbered paragraphs of plaintiff's complaint can be summarized as follows. The allegations in paragraphs 6 through 52 pertain to the events leading up to plaintiff's arrest and prosecution, including allegedly unconstitutional searches and seizures, assaults by officers, issuance of invalid search warrants, violations of right to counsel, and seizure of plaintiff's property without an order or warrant. At paragraph 53, plaintiff begins the narrative concerning his prosecution, asserting that Assistant United States Attorney Rene Shekmer withheld

exculpatory evidence, that retained counsel Jeffrey O'Hara conspired to deprive plaintiff of a Fourth Amendment defense arising from illegally seized evidence, that Judge Bell and various Clerk's Office employees collaborated to somehow remove a motion to suppress from the trial court record, that plaintiff was coerced to enter his guilty plea, that he was physically abused in open court during the plea hearing, and that counsel abandoned his adversary role in favor of a conspiracy with government officers.  At approximately paragraph 102, plaintiff complains about the procedures surrounding the entry of judgment and forfeiture orders, as well as the regularity of sentencing and post-judgment proceedings.  At paragraph 186, plaintiff asserts claims against Judge Gordon Quist, who dismissed a civil action (case no. 4:04-cv-55) brought by plaintiff against certain law enforcement officers.  At paragraph 198, plaintiff includes three deputy clerks of the United States Court of Appeals for the Sixth Circuit and staff attorneys of that court in the conspiracy to cover up lower court wrongdoing.  Beginning at paragraph 223, plaintiff asserts claims against Federal Bureau of Prisons employees, arising from the conditions of plaintiff's confinement.  Finally, in paragraphs 336 through 340, plaintiff brings an equitable action under Rule 41(g) of the Federal Rules of Criminal Procedure for return of unlawfully seized property, including the forfeited bank accounts and the Stadium Drive and Pokegon parcels of real estate.

On the basis of the foregoing factual allegations, plaintiff brings a RICO claim for the loss of business and property, *Bivens* claims, an FTCA claim, and pendent state-law claims for assault and battery, extortion, and false imprisonment.

### Discussion

I.    **Claims Based on Events Surrounding Plaintiff's Arrest, Prosecution, and Conviction**

A.    *Heck v. Humphrey*

Many of plaintiff's claims constitute a direct challenge to the validity of his criminal conviction. These include claims for illegal search and seizure, ineffective assistance of counsel, prosecutorial misconduct and withholding of exculpatory evidence, the invalidity of plaintiff's plea of guilty and subsequent sentencing proceedings, judicial error and misconduct, and the unconstitutionality of the forfeiture of plaintiff's real and personal property as a result of the criminal judgment. These claims, whether brought under *Bivens*, the FTCA, or the RICO statute, clearly presuppose the invalidity of the criminal judgment and orders of forfeiture, and they represent a collateral attack on the judgment and orders.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held:

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Heck*, 512 U.S. at 486-87 (footnote omitted). *Heck* requires courts to "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487.

*Heck* involved a section 1983 claim for damages arising from a state conviction. In the fourteen years since *Heck* was decided, its holding has been extended to actions seeking injunctive or declaratory relief. *See Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997). Furthermore, the Sixth Circuit and other federal appellate courts have extended the rationale of the *Heck* case to *Bivens* actions, FTCA actions, and RICO claims against federal officials and entities, where such claims are brought by federal prisoners arising from their convictions in the federal courts. *See, e.g., Abiodun v. Mukasey*, Nos. 07-1266, 07-1401, slip op. at 3 (10th Cir. Feb. 11, 2008) (FTCA); *Swan v. Barbadoro*, 520 F.3d 24, 26 (1st Cir. 2008) (RICO); *Hinton v. United States*, 91 F. App'x 491, 493 (6th Cir. 2004) (FTCA); *Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998) (*Bivens* action); *Akers v. Bishop*, 65 F. App'x 952, 954 (6th Cir. 2003) (RICO); *Stephenson v. Reno*, 28 F.3d 26 (5th Cir. 1994) (*Bivens* action); *see also Dare v. United States*, No. 07-3217, 2008 WL 383794, at * 2 (3d Cir. Feb. 14, 2008) (FTCA); *Parris v. United States*, 45 F.3d 383, 385 (10th Cir. 1995) (FTCA); *Rouser v. Johnson*, No. 94-30013, 1994 WL 523784, at * 4 (5th Cir. Sept. 9, 1994) (RICO and *Bivens*). On the basis of *Heck*, the federal courts have dismissed nearly identical RICO, FTCA, and *Bivens* actions against federal officers, prosecutors, and judges brought by convicted defendants. For example, in *Harrison v. Grand Jurors*, No. 3:05-cv-438, 2006 WL 354218 (M.D. Fla. Feb. 13, 2006), the district court dismissed a federal prisoner's RICO action brought against federal agents, prosecutors, and a federal judge, in which the prisoner claimed that defendants had engaged in "racketeering activity" and "conspired to obstruct justice, bribe witnesses and suborn perjury" in securing his indictment and conviction on drug charges. The court reasoned that plaintiff had failed to show that his conviction had been rendered invalid, as required by *Heck*. 2006 WL 354218, at * 2-4. Likewise, the *Rouser* case was brought by a federal prisoner who had been convicted of

-10-

money laundering on the basis of a guilty plea.  He commenced a RICO action against DEA and FBI agents, assistant United States Attorneys, IRS agents, probation officers, and his own defense attorney, alleging that the defendants' actions during the course of his criminal investigation and prosecution violated his Fourth, Fifth, Sixth, and Fourteenth Amendment rights.  On the basis of *Heck* and its progeny, the Fifth Circuit affirmed dismissal of the action.  1994 WL 523784, at * 4. The Sixth Circuit is among those courts that has applied the bar of *Heck v. Humphrey* to civil RICO claims and *Bivens* actions by convicted federal prisoners.  In *Paulus v. Light*, No. 96-2355, 1997 WL 461498 (6th Cir. Aug. 12, 1997), plaintiff attempted to bring civil rights and RICO conspiracy claims against federal prosecutors, agents, and witnesses, alleging that they conspired to entrap him into trafficking stolen vehicles, leading up to his conviction.  The Court of Appeals affirmed the dismissal of all claims on the basis of *Heck*.  1997 WL 461498, at * 1; *accord, Hermansen v. Chandler*, No. 99-5943, 2000 WL 554058, at * 2 (6th Cir. Apr. 28, 2000).

Virtually all of plaintiff's claims against federal officers, prosecutors, and judges arising from events predating the entry of judgment are barred by *Heck*, because those claims either directly challenge plaintiff's criminal conviction or imply that his conviction is invalid.  Thus, plaintiff's allegations of violations of his Fourth Amendment rights from illegal searches and seizures leading up to his federal conviction are barred by *Heck*, until such time as plaintiff is successful in overturning his conviction.  *See Schilling v. White*, 58 F.3d 1081, 1085-86 (6th Cir. 1995).  Certainly, plaintiff's claims of prosecutorial misconduct and ineffective assistance of counsel, his challenges to the voluntariness of his guilty plea, and claims of judicial misconduct leading up to conviction and sentencing are all direct attacks on the validity of his conviction and must be dismissed under *Heck*.  Furthermore, plaintiff's challenges to the final orders of forfeiture

entered by Judge Bell are barred.  In *Libretti v. United States*, 516 U.S. 29, 38-39 (1995), the Supreme Court held that forfeiture "is an element of the sentence imposed following conviction." Consequently, a judgment in plaintiff's favor would necessarily imply the invalidity of part of his sentence.  Plaintiff's claims against Judge Bell, assistant U.S. Attorneys, federal marshals who executed the forfeiture judgment, and title companies and others who dealt with the forfeited real estate all presuppose the invalidity of the court's criminal judgment, and the bar of *Heck* applies. *See Gay v. United States*, 250 F. App'x 643, 644 (5th Cir. 2007); *Rashid v. United States*, 205 F. App'x 952, 953 (3d Cir. 2006).  In fact, the Sixth Circuit has already applied *Heck* to identical claims brought by Mr. McGee in a previous case.  *McGee v. Goodell*, No. 04-2503 (6th Cir. Apr. 28, 2006).

On the foregoing basis, I conclude that *Heck v. Humphrey* bars all plaintiff's claims asserted in paragraphs 6 through 185 of his amended complaint, as those claims all directly challenge, or at least imply the validity of, plaintiff's criminal conviction and sentence.

### B.    Statute of Limitations

Not all claims that predate a conviction are barred by the rule of *Heck v. Humphrey*. *See Wallace v. Kato*, 127 S. Ct. 1091, 1097-98 (2007).  *Heck* does not bar claims which do not imply the invalidity of the conviction itself.  Assuming that one or more claims based on events leading up to plaintiff's conviction may escape the bar of *Heck v. Humphrey*, on the theory that such claims do not necessarily impugn the validity of plaintiff's conviction, it is patently clear that all such claims are now barred by the statute of limitations.  The court may dismiss a complaint as time-barred under 28 U.S.C. § 1915(e)(2) when the defect is obvious.  *See Brand v. Motley*, No. 06-6362, ___ F.3d ___, 2008 WL 2151638, at * 3 (6th Cir. May 23, 2008).

Plaintiff's principal claim, brought under RICO, suffers from numerous, patent defects. For example, despite the length and prolixity of plaintiff's amended complaint, he has not alleged a proper RICO conspiracy, pursuant to which each alleged member of the conspiracy most have agreed to commit at least two predicate offenses. Furthermore, a conspiracy involving officers, lawyers, judges, court of appeals judges, and title companies spanning a period of over five years, is nonsensical on its face and must be labeled clearly "irrational or wholly incredible," for purposes of determining whether a claim brought *in forma pauperis* is frivolous or malicious. *See Denton v. Hernandez*, 504 U.S. 25, 33 (1992). It is unnecessary, however, to delve deeply into the manifest deficiencies of plaintiff's RICO claim, because that claim is clearly barred by the statute of limitations. A civil RICO action has a four-year limitation period. *Rotella v. Wood*, 528 U.S. 549, 553 (2000). RICO claims are limited to injury to a plaintiff's "business or property," 18 U.S.C. § 1964(c), and an allegation of loss of business or property is a "prerequisite" to a successful RICO claim. *See Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004). The only "business or property" identified in the amended complaint are the items of real and personal property that were forfeited to the United States government. The final orders of forfeiture were entered in November and December 2001. The Court of Appeals has already ruled that the forfeiture orders became final on October 9, 2001. (*U.S. v. McGee*, No. 04-1406 (6th Cir. Sept. 29, 2006)). A RICO claim accrues when a plaintiff knew or should have known of an injury. *See Rotella*, 528 U.S. at 554-55; *Taylor Group v. ANR Storage Co.*, 24 F. App'x 319, 325 (6th Cir. 2001). Plaintiff's numerous *pro se* motions in case no. 1:01-cr-122, all filed in the year 2002, challenging the forfeiture on every conceivable ground, clearly demonstrate plaintiff's actual knowledge of the alleged injury to his real and personal property arising from the forfeitures. In fact, plaintiff has already pursued

-13-

an unsuccessful appeal in the Sixth Circuit seeking to overturn the forfeitures. (No. 04-1406). The present case, filed in September 2007, almost six years after the orders of forfeiture and five years after plaintiff first challenged those orders by motion in this court, clearly came after the expiration of the four-year RICO limitations period.

Plaintiff's *Bivens* claims are also time-barred. The Sixth Circuit applies state law in determining the timeliness of a *Bivens* action. *See Harris v. United States*, 422 F.2d 322, 331 (6th Cir. 2005). For claims accruing in Michigan, the three-year statute of limitations which applies to claims for injuries to person or property, applies to *Bivens* actions. *See Schaaf v. Secretary, U.S. Dep't of Hous. & Urban Dev.*, No. 98-1210, 1999 WL 183404, at * 2 (6th Cir. Mar. 16, 1999). "Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations begins to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of injury is not then known or predictable." *Wallace*, 127 S. Ct. at 1091. Under this rule, plaintiff's *Bivens* claims against the officers who conducted investigations, searches and seizures, and arrests in this case all accrued before May 24, 2001, when plaintiff was indicted. *Wallace*, 127 S. Ct. at 1100. Likewise, his *Bivens* actions against assistant United States Attorneys accrued beginning in 2001, when plaintiff was indicted and prosecuted, and could not possibly have accrued any later than May 21, 2004, when plaintiff was sentenced in the district court. Consequently, to the extent that plaintiff's *Bivens* claims predating his conviction are not *Heck*-barred, all of these claims are time-barred under the three-year statute of limitations.

Plaintiff's FTCA claims against the United States, which arise from the allegedly tortious conduct of federal officers, are also barred by the statute of limitations. The FTCA represents a limited waiver of sovereign immunity. 28 U.S.C. § 2674; *see Ali v. Federal Bureau of*

-14-

*Prisons*, 128 S. Ct. 831, 835 (2008).  A plaintiff seeking to pursue under the FTCA must strictly

abide by the restrictions placed by Congress on its waiver of sovereign immunity.  *See FDIC v.*

*Meyer*, 510 U.S. 471, 477 (1994).  The FTCA establishes a two-year statutory period, during which

any tort claim against the United States must be presented in writing to "the appropriate Federal

agency" within two years after such claim accrues.  28 U.S.C. § 2401(b); *see Myers v. United States*,

No. 07-3817, ___ F.3d ___, 2008 WL 2121332 at * 2 (6th Cir. May 21, 2008).  Because the FTCA

is a limited waiver of sovereign immunity, courts must carefully construe its time limitation so as

not to extend the limited waiver beyond that which Congress intended.  *See United States v. Kubrick*,

444 U.S. 111, 117-18 (1979).  Normally, a tort claim accrues at the time of injury.  *Rakes v. United*

*States*, 442 F.3d 7, 19 n.6 (1st Cir. 2006).

   Plaintiff has attached to his complaint two administrative claims predating the filing

of his complaint.  The first was submitted to the Department of Justice under date September 12,

2006.  (Ex. B to Am. Compl.).  Plaintiff's administrative claim identifies as the date and day of

accident "May 11, 2001 -- ongoing until present."  The substance of the administrative claim is the

unlawful seizure of property without probable cause and the unlawful deprivation of property "by

the multiple abuses of judicial process" detailed in the supporting affidavit.  The subject-matter of

the administrative claim is the same property forfeited in case no. 1:01-cr-122.  The second

administrative claim (Ex. D to Am. Compl.) was filed on January 4, 2007, with the Supreme Court

of the United States.  This claim arose from alleged acts and omissions of court personnel and

alleged wrongful deprivation of property in connection with the previous criminal case.  As noted

above, plaintiff lost all interest in the forfeited real and personal property at the time the final orders

of forfeiture were entered in 2001.  Plaintiff's contention that he "discovered" these claims in the

year 2006 is demonstrably false, as the criminal record is replete with motions filed in the year 2002 challenging every aspect of the forfeiture proceedings.  Despite his conclusory assertion that the wrongful conduct is "ongoing," plaintiff pleads no facts that support this assertion.  Assuming that plaintiff has pleaded actionable FTCA claims, those claims accrued in the year 2001.  Plaintiff's administrative claims, filed in 2006 and 2007, were clearly untimely under the two-year statute of limitations established in 28 U.S.C. § 2401(b).

Finally, plaintiff's pendent state-law claims are clearly barred by the statute of limitations.  Plaintiff purports to bring state-law claims against the federal officers who executed searches and seizures, who procured and executed forfeiture warrants, and who arrested him.  He brings similar state-law claims against the assistant prosecutors and others who were instrumental in prosecuting him.  In his complaint (¶¶ 111-121), he characterizes these tort claims as claims for fraud, extortion, fraudulent concealment, undue influence, breach of fiduciary duty, trespass, wrongful conversion, wrongful conveyance and unjust enrichment.  Under Michigan law, a claim generally accrues "at the time the wrong upon which the claim is based was done regardless of the time when damage results."  MICH. COMP. LAWS § 600.5827.  Under Michigan law, the wrong is done "when the plaintiff is harmed rather than when the defendant acted." *Boyle v. General Motors Corp.*, 661 N.W.2d 557, 560 n.5 (Mich. 2005).  The Michigan Supreme Court has authoritatively held that this statute abrogates common-law discovery rule, under which a claim does not accrue until the plaintiff knows, or objectively should know, that he has a cause of action and can allege it in a proper complaint. *Trentadue v. Gorton*, 738 N.W.2d 664, 670 (Mich. 2007).  The wrongful acts underlying plaintiff's state-law claims set forth in count 4 are all alleged to have occurred in the year 2001, principally in connection with the forfeiture and subsequent sale of plaintiff's real and personal

property.  Even assuming that plaintiff's pendent state-law claims have facial merit, which they do

not, any such claim would have accrued in the year 2001, when plaintiff lost his real and personal

property.  The statute of limitations applicable to claims for injury to person or property is three

years. MICH. COMP. LAWS § 600.5805(10).  This three-year period applies to all of plaintiff's state-

law claims.  *See Village of Millford v. K-H Holding Corp.*, 390 F.3d 926, 931 (6th Cir. 2004)

(trespass); *Peterson Novelties, Inc. v. City of Berkley*, 672 N.W.2d 351, 360-61 (Mich. Ct. App.

2003) (claim for deprivation of property arising from illegal search and seizure); *see also In re Jeruis*

*C. Webb Trust*, Nos. 263759, 263900, 2006 WL 173172, at * 2-3 (Mich. Ct. App. Jan. 24, 2006)

(breach of fiduciary duty).  Thus, all state-law claims set forth in count 4 are barred by the three-year

statute of limitations.

## II.     Claims Not Directly Related to Conviction

Plaintiff's amended complaint sets forth several claims not directly related to

plaintiff's conviction.  These are (1) claims against Judge Gordon Quist and Clerk Ronald Weston,

(2) claims against Sixth Circuit clerks and staff attorneys, and (3) claims against officials of the

Federal Bureau of Prisons.

### A.     Judge Gordon Quist and Court Clerk Ronald Weston

The claims against Judge Gordon Quist and Ronald Weston, the Clerk of the District

Court, arise from their involvement in a civil action, *McGee v. Goodell, et al.*, case no. 4:04-cv-55.

Plaintiff filed *McGee v. Goodell* on April 19, 2004, approximately one month before he was

sentenced.  In his amended complaint, plaintiff sought damages from several federal and state law

enforcement officers as well as two municipalities and a federal probation officer.  His claims arose

from *United States v. McGee* and are substantially similar to those asserted in the present action.  By judgment entered September 28, 2004, Judge Quist dismissed all of plaintiff's claims.  The probation officer was entitled to absolute immunity and plaintiff's amended complaint failed to state a claim against all other defendants because it was an improper collateral attack on the criminal forfeiture proceedings.  Plaintiff appealed to the Court of Appeals, which affirmed the judgment of dismissal by *per curiam* order.  *See McGee v. Goodell*, No. 04-2503 (6th Cir. Apr. 28, 2006).  The Court of Appeals found that most of plaintiff's claims represented impermissible collateral attacks on the criminal sentence and were barred by *Heck v. Humphrey*.  The court also found that the federal probation officer was entitled to absolute judicial immunity and that plaintiff's procedural objections to the proceedings in the district court were "without merit."  On June 11, 2007, the Supreme Court denied plaintiff's petition for a writ of *certiorari*.  In his present complaint, plaintiff seeks monetary damages against Judge Quist on the basis of the same alleged procedural errors that were rejected as meritless by the Court of Appeals.  Clerk Ronald Weston is alleged to have conspired with Judge Quist in rejecting one of plaintiff's unsigned submissions.

Judges enjoy absolute immunity from federal damage suits for acts performed in their judicial capacities, except for acts done in the clear absence of jurisdiction.  *See Pierson v. Ray*, 386 U.S. 547, 554-55 (1967).  A claim that the judge acted "maliciously or corruptly" and in excess of his jurisdiction is insufficient to overcome judicial immunity.

> "[J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly."  *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1872).  This immunity applies to actions brought under 42 U.S.C. § 1983 to recover for alleged deprivation of civil rights.  *See Pierson v. Ray*, 386 U.S. 547, 554-55, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).  The Supreme Court explained:  "If judges were personally liable for erroneous decisions, the

resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication . . . . Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability." *Forrester v. White*, 484 U.S. 219, 226-27, 108 S. Ct. 538, 98 L.Ed.2d 555 (1988).

*Stern v. Mascio*, 262 F.3d 600, 606 (6th Cir. 2001). The defense of judicial immunity applies to federal and state judges. *See Wagenknect v. United States*, 509 F.3d 729, 734 n.5 (6th Cir. 2007); *Bradley v. United States*, 84 F. App'x 492 (6th Cir. 2003).

The Supreme Court has made it clear that absolute judicial immunity is overcome "in only two sets of circumstances." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). First, a judge is not immune for non-judicial actions, *i.e.*, actions not taken in a judicial capacity. *Id.* Second, a judge is not immune for actions, although judicial in nature, done in complete absence of all jurisdiction. *Id.* at 12. In determining whether certain conduct is judicial in nature, the court must adopt a functional approach, asking whether the act is one normally performed by a judge. *Stump v. Sparkman*, 435 U.S. 349, 362 (1978); *Barnes v. Winchell*, 105 F.3d 1111, 1116 (6th Cir. 1997).

The amended complaint, in paragraphs 186 through 197, complains about a number of Judge Quist's actions, alleging that the judge erred in allowing the government to file a motion to dismiss on behalf of the U.S. probation officer named as a defendant, that the court erred in granting plaintiff's motion to amend the complaint but giving him only fourteen days to file the amendment, violated Rule 11(a) by rejecting an unsigned motion for enlargement of time, and erred in dismissing the action without bothering to wait the fourteen days allowed to plaintiff to amend

his complaint.  He also alleges that Judge Quist wrongfully dismissed his claims against certain officers.

Under the functional analysis prescribed by the Supreme Court, all of the actions challenged by plaintiff in this case must be deemed judicial in nature, that is, they are normally performed by a judge.  Only judges hear cases, rule on motions, set hearings, and perform the other functions intimately involved with the adjudication of cases.  *See Mann v. Conlin*, 22 F.3d 100, 104 (6th Cir. 1994) (setting hearing dates is a "paradigmatic" judicial act); *accord Cantanzaro v. Cottone*, 228 F. App'x 164, 167 (3d Cir. 2007) (decision whether to recuse is a judicial act); *Beddini v. Dilts*, 132 F. App'x 974 (3d Cir. 2005) (*per curiam*) (deciding motions is judicial function).  The Supreme Court has specifically held that the commission of grave procedural errors, including those involving due process, does not deprive an act of its essentially judicial nature.  *See Stump v. Sparkman*, 435 U.S. at 359.

A judge is not immune for judicial actions done in the complete absence of all jurisdiction.  *See Mireles*, 502 U.S. at 11.  Plaintiff has alleged no facts that would raise even a doubt about Judge Quist's jurisdiction to hear and determine the previous civil action.  The Court of Appeals affirmed Judge Quist's judgment on the merits, and never intimated that he lacked jurisdiction over the *Bivens* and other federal claims asserted by plaintiff.

Judge Quist is clearly entitled to the protection of judicial immunity.  Plaintiff's allegations of due process violations, abuse of power, and malicious intent do nothing to disturb this conclusion.  An allegation that a judge committed a grave procedural error or ethical violation will not strip the judge of the shield of absolute judicial immunity.  *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997); *Riser v. Schnieder*, 37 F. App'x 763, 764 (6th Cir. 2002) (state judge entitled to

immunity even if decisions were erroneous, tortious, or violated judicial code). The Sixth Circuit has noted that the judicial. process, and principally the right to take a direct appeal, is generally sufficient to vindicate individual rights and obviates the need for damage actions against judges to prevent unjust results. *Ireland*, 113 F.3d at 1443.

Defendant Weston, as Clerk of the Court, is entitled to the protection of quasi-judicial immunity. Plaintiff specifically alleges that the Clerk of the Court did not file or record plaintiff's motion for enlargement of time "in collaboration and communication with" Judge Quist. Court employees who act pursuant to the directions of a judicial officer are entitled to quasi-judicial immunity. *See Bradley v. United States*, 84 F. App'x 492, 493 (6th Cir. 2003).

B.    Sixth Circuit Employees

In paragraphs 198 through 222 of the amended complaint, plaintiff attempts to allege claims against three deputy clerks of the United States Court of Appeals for the Sixth Circuit (Susan Burlage, Janice Yates, and Ken Lumas) as well as the staff attorneys of the Court of Appeals. In these paragraphs, plaintiff makes wild and unsupportable allegations that these employees of the Court of Appeals conspired with the United States Attorney and employees of the district court to deny plaintiff due process of law and to cover up trial court misdeeds. It is not necessary, however, to get to address the substance of these allegations. Plaintiff has alleged no basis upon which this court could exercise personal jurisdiction over employees of the Court of Appeals acting in Cincinnati, Ohio, nor would venue over those defendants be proper in the Western District of Michigan. It is inconceivable that employees of the Court of Appeals would be subject to suit as far north as Marquette, Michigan, and as far south as Chattanooga, Tennessee, on the basis of

allegations by disgruntled litigants that those employees somehow violated their rights in processing appeals. All claims against those defendants should therefore be dismissed for lack of proper jurisdiction and venue.

C.      Conditions of Confinement Claims

Paragraphs 223 through 246 attempt to assert claims against the Director of the Federal Bureau of Prisons as well as officials of the Allenwood Correctional Facility, located in the State of Pennsylvania. These paragraphs assert challenges to the conditions of plaintiff's confinement and assert that these defendants are impeding plaintiff's right to access to courts. Again, the complaint sets forth no basis upon which residents of the State of Pennsylvania might be subject to suit in the Western District of Michigan. All claims against defendants Lappin, Tollacksen, Dodril, and Martinez should therefore be dismissed for lack of personal jurisdiction and for improper venue.

III.    **Motion for Return of Property**

Finally, count 5 of the amended complaint purports to an action for return of unlawfully seized property brought pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure. The subject matter of this action includes the forfeited savings account at Michigan National Bank, the Stadium Drive property, and the Pokegon property. This claim is frivolous and clearly barred by *res judicata*. In the criminal case, plaintiff filed three *pro se* motions (docket #'s 141, 142, 143) on April 29, 2004, seeking return of the identical property. Judge Bell denied the motions, and, on appeal, the Court of Appeals determined that plaintiff had not properly challenged the order on appeal. (No. 04-1706). Furthermore, the Court of Appeals affirmed the propriety of

the final orders of forfeiture in a separate appeal.  (No. 04-1406).  In these circumstances, all issues have been resolved against plaintiff, and the prior judgments of this court and of the Sixth Circuit Court of Appeals bar the duplicative claims set forth in count 5 of the amended complaint under the doctrine of *res judicata*.

**Recommended Disposition**

This is only the latest chapter in plaintiff's vindictive campaign to penalize anyone who was even remotely connected with plaintiff's plea-based conviction in the year 2001.  All claims against defendants Burkage, Yates, Lumas, "Staff Attorneys," Lappin, Martinez, Tollackson and Dodrill should be dismissed for lack of proper venue, 28 U.S.C. § 1406(a), and lack of personal jurisdiction.  All other claims in plaintiff's amended complaint should be dismissed with prejudice as both frivolous and malicious within the meaning of 28 U.S.C. § 1915(e)(2)(B)(i).  The claims should also be dismissed with prejudice under 28 U.S.C. § 1915(a)(2)(B)(ii) and (iii) because they fail to state a claim upon which relief can be granted and seek monetary relief against defendants who are immune from such relief.  On the same grounds, I recommend that the court certify that any appeal would be frivolous and brought in bad faith.  28 U.S.C. § 1915(a)(3).  If this report and recommendation is accepted, the dismissal will count as a strike within the meaning of 28 U.S.C. § 1915(g).  Section 1915(g) states, "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted. . . ."  28 U.S.C. § 1915(g).  I find that this lawsuit is

plaintiff's third strike in the Western District of Michigan, the other two being cases 1:04-cv-222 and 4:04-cv-55.  Thus, if this report and recommendation is adopted, any future civil action by plaintiff will be subject to the restrictions established by 28 U.S.C. § 1915(g).


Dated:   June 6, 2008                              /s/  Joseph G. Scoville_____
                                                            United States Magistrate Judge


## NOTICE TO PARTIES

       Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).